IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| JAMES H. TARBELL and | : | Case No. 10-10492-TPA |
| MARY ANN TARBELL | : | Chapter 7 |
| *Debtors* | : | |
| | | |
| LAWRENCE J. LAMACCHIA, | : | Adv. No. 10-1051 |
| *Plaintiff* | : | |
| | : | Related to Document No. 18 |
| v. | : | |
| | : | |
| JAMES H. TARBELL and | : | |
| MARY ANN TARBELL, | : | |
| *Defendants*. | : | |

*Appearances:*   Edwin W. Smith, Esq., for the Plaintiff
Joseph B. Aguglia, Jr., Esq., for the Defendants

## MEMORANDUM OPINION

In this Adversary Proceeding the Plaintiff seeks a determination that a debt owed to him by the Debtors, the Defendants in this matter, is excepted from discharge, primarily pursuant to *11 U.S.C. §§523(a)(4)* but alternatively, pursuant to *Sections 523(a)(2)* and *(6)* as well.[1] Presently before the Court is ***Plaintiff's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment*** filed at Document No. 18 ("Motion"). On September 24, 2010, the Court heard the initial argument on the *Motion* and directed the Parties to file supplemental

---

[1] In broad terms, *Section 523(a)(4)* relates to fraud or defalcation while acting in a fiduciary capacity, *Section 523(a)(2)* relates to money obtained by fraudulent means, and, *Section 523(a)(6)* relates to willful and malicious injury.

1

briefs as to certain issues, which filings are now complete. The matter is ripe for decision and for the reasons stated below, the *Motion* will be denied.[2]

## *FACTS*

Plaintiff, Lawrence J. LaMacchia, suffered a traumatic brain injury in 1996 and has resided at a personal care facility since 1998. Plaintiff's main sources of income during this period of time has been monthly payments from workers compensation and social security disability. On September 13, 1997, Plaintiff signed a Power of Attorney form designating Debtor, James H. Tarbell, as his attorney-in-fact, authorizing him to manage his financial affairs. On December 2, 1998, Plaintiff signed a similar Power of Attorney form as to Debtor, Mary Ann Tarbell. The Debtors managed Plaintiff's financial affairs pursuant to these Powers of Attorney until April 2009 when he revoked them after becoming concerned that the Debtors had not properly accounted to him for the funds they had managed on his behalf.

On April 7, 2009, Plaintiff, through his attorney, Mary Alfieri Richmond, filed a Motion for Accounting with the Erie County, Pennsylvania Court of Common Pleas, *(In re Power of Attorney of Lawrence J. Lamacchia*, Orphans' Division No. 91-2009) directed against the Debtors. The case was assigned to the Honorable Stephanie Domitrovitch. The Debtors acted *pro se* in the matter. Judge Domitrovitch conducted evidentiary hearings on June 2, 2009 and August 3, 2009. On November 4, 2009, Judge Domitrovitch issued an 11-page *Opinion* and an

---

[2] This is a core proceeding under *28 U.S.C. §157(b)(2)(I)*. The Court has jurisdiction to decide this matter pursuant to *28 U.S.C. §§157 and 1334*.

accompanying 1-page *Order*.³ She determined she possessed jurisdiction to hear the matter pursuant to *20 Pa.C.S.A §711(22)*⁴ and found in favor of Plaintiff, "surcharging" the Debtors in the amount of $83,312.43 "for the failure to exercise due care in the management of Lawrence J. LaMacchia's financial affairs while they exercised Powers of Attorney for him." *Order* at ¶1.

## *DISCUSSION*

As indicated by its full title, the *Motion* seeks an entry of judgment in favor of the Plaintiff, either on the pleadings pursuant to *Fed.R.Bankr.P. 7012* (incorporating *Fed.R.Civ.P. 12(c)*), or by way of summary judgment pursuant to *Fed.R.Bankr.P. 7056* (incorporating *Fed.R.Civ.P. 56.*) Either way, the central premise of the *Motion* is that principles of collateral estoppel, or as it is sometimes called "issue preclusion," require this Court to find that the *Orphans' Court Judgment* is binding and dispositive here.

The actual *Order* issued by Judge Domitrovitch only says, in substance, that the Debtors are being surcharged for the failure to exercise due care in their management of Plaintiff's financial affairs. Plaintiff, however, points out that the *Opinion* accompanying the *Order* contains a number of statements that seem to go farther, to a finding of wrongful or malicious acts by the Debtors, including the following:

---

³ These documents will be referred to individually as the *Opinion* and *Order*, respectively and sometimes collectively as the *Orphans' Court Judgment*.

⁴ That statute provides that the orphans' court division of courts of common pleas shall hear matters pertaining to the exercise of powers by agents acting under powers of attorney.

- "...this Court finds that James H. Tarbell and Mary Ann Tarbell did indeed violate their fiduciary duties to Mr. Lamacchia by misappropriating his funds." *Opinion* at 3.

- "It is clear to this Court that the reason the Tarbells did not keep records of the funds of Mr. LaMacchia, which they managed, is because they utilized the majority of these funds on their own behalf." *Opinion* at 10.

- "The Tarbells took advantage of Mr. LaMacchia and there should be no question that this Court finds the conduct of the Tarbells as depraved, decadent, and reprehensible." *Id*.

Plaintiff further points out that the *Order* is prefaced by the phrase "for all of the foregoing reasons stated," referring back to the *Opinion*. Thus, Plaintiff argues that the "findings" from the *Opinion* quoted above should be considered as incorporated into the *Order* for purposes of a collateral estoppel analysis.

The Debtors disagree with the Plaintiff as to whether the Court may consider the language in the *Opinion* and also disagree as to the nature of the findings in the *Orphans' Court Judgment*. They do not, however, appear to dispute that if the Court were to find collateral estoppel applicable here then Plaintiff would be entitled to judgment in this case. In short, the *Motion* rises or falls on the outcome of the collateral estoppel issue.

Plaintiff has cited some authority for the proposition that a court may go "behind" the bare judgment or order in a prior case to the underlying record for purposes of examining another court's findings when deciding whether a party should be collaterally estopped by a prior case. *See, e.g., In re McCall*, 76 B.R. 490 (Bankr. E.D. Pa. 1987), *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664 (1975). The Court need not decide that issue here because it finds that even if Judge Domitrovitch's *Opinion* is considered, collateral estoppel does not apply in this case. For

purposes of deciding the *Motion* the Court will therefore simply assume *arguendo* that the *Opinion* may be considered.

Taking a step back for a moment, there is no dispute that federal courts must give preclusive effect to state court judgments whenever the courts of the issuing state would do so. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing the Full Faith and Credit Act, *28 U.S.C. §1738).*[5] It is also not disputed that collateral estoppel principles apply in exception to discharge litigation under *11 U.S.C. Section 523(a). See, Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991). A variety of judicial formulations as to the requirements which must be met under Pennsylvania law for collateral estoppel to apply can be found, with some minor differences, among the federal courts. *See*, *Witkowski v. Welch*, 173 F.3d 192, 203 n. 15 (3d Cir. 1999) ( noting that some courts list four elements, while others list five, but that the doctrine is "essentially the same under either analysis"). For present purposes the following explanation suffices:

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.
>
> Collateral estoppel is also referred to as issue preclusion. It is a broader concept than res judicata and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit.

---

[5] This Act requires the records of a state court proceeding to be proved or admitted in a federal court by "the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form." The *Opinion* and *Order* which have been submitted in the present case, as an exhibit to the *Complaint*, do not appear to meet those requirements. However, the Debtors have not raised statutory compliance as an issue, and have not otherwise questioned the authenticity of the *Opinion* and *Order*, therefore the Court will overlook any irregularity in authentication for purposes of deciding the *Motion*.

*Catroppa v. Carlton*, 998 A.2d 643, 646 (Pa. Super. Ct. 2010) (quoting *Incollingo v. Maurer*, 394 Pa. Super. 352, 575 A.2d 939 (1990)); *Prusky v. ReliaStar Life Ins. Co.,* 532 F.3d 252, 265-66 (3d Cir. 2008).  In the present case, the Debtors ask the Court to focus on the fifth element as stated in the quotation above, contending that any finding made by Judge Domitrovitch going beyond a lack of due care by the Debtors was not essential to her decision and is therefore not entitled to preclusive effect.

The requirement that an issue in a prior proceeding must have been essential to the judgment there in order to be given preclusive effect is longstanding.  *Restatement, Judgments* (1942), *§68*, *Comment o*, notes that:

> "[w]here ...the court makes findings of fact but the judgment is not dependent upon those findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action."

This same principle was carried over to *Restatement, Second, Judgments* (1982), *§27*, *Comment h*, which notes that such non-essential findings have "the characteristics of dicta" which may not normally be the subject of an appeal by the party against whom they were made.  *Comment h* states that in these circumstances the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.  *See also, e.g., Bobby v. Bies*, __ U.S. __, 129 S. Ct. 2145, 2152 (2009) (a determination by a court ranks as essential for collateral estoppel purposes only when the final outcome hinges on it).

Pennsylvania cases have followed the requirement that the issue must have been essential for the prior judgment for collateral estoppel to apply. For example, in *Thal v. Krawitz*, 365 Pa. 110, 73 A.2d 376 (1950) the plaintiff Thal had leased some real property from Myron Krawitz and his mother Minnie Krawitz. The lease agreement also included an option to purchase. Myron held the title to the property in trust for himself, Minnie, and two brothers, Leonard and Lester, who were away in the army. Thal attempted to exercise the purchase option and when that was refused he filed a suit in equity for specific performance. That case was tried on the merits and the Krawitzs prevailed on the ground of the invalidity of the option agreement because Myron did not have the authority to bind Lester and Leonard without their approval. Thal then brought an action for damages against Myron and Minnie, alleging that he had relied upon false and fraudulent representations by them that they were authorized to enter into the option on behalf of Leonard and Lester. In answering, Myron and Minnie pleaded as an affirmative defense that the judge in the prior equity action had made findings that they had not made the alleged misrepresentations. The Pennsylvania Supreme Court held that Thal was not estopped from alleging misrepresentation in the damage case, even though he himself had unsuccessfully asked the court in the equity case to find that misrepresentations had been made. As the court explained:

> 'the controlling issue [in the equity suit] * * * * was whether at the time defendants Krawitz were authorized to bind Lester and Leonard Krawitz.' To that issue, the chancellor's finding with respect to the alleged misrepresentations of Myron and Minnie Krawitz was as immaterial as would have been a finding, as requested by the plaintiff, that the defendants *did* make the alleged misrepresentations. The finding was, therefore, unessential to the decree entered and, consequently, not binding in the present action on the plaintiff.

365 Pa. at 113-14, 73 A.2d at 378 (emphasis in original).

Also instructive is the venerable case of *Tams v. Lewis*, 42 Pa. 402 (1862). In that case a creditor obtained a judgment against his debtor and then issued an attachment execution against a garnishee. The verdict in the attachment proceeding was for the garnishee on a plea of *nulla bona* (*i.e.,* a plea that he did not have any goods belonging to the debtor). The creditor subsequently brought a suit against both the debtor and the garnishee, alleging that they had conspired to transfer assets to defeat the creditor's rights. In that subsequent case, the court found that even though the issue of fraud had been tried in the attachment proceeding, judgment for the garnishee was not conclusive on the fraud issue since the plea was *nulla bona* and the fraud issue was not essential or material as to that determination. *See also, e.g., In re Klein*, 39 B.R. 927, 930 (Bankr. Pa. 1984) (although state court made a finding of fraud in connection with the operation of the debtor's heating and plumbing business, such finding was not essential to the judgment therefore the principle of collateral estoppel could not be applied in a bankruptcy exception to discharge proceeding.)

From what the Court is able to glean, the controlling issue in the case before Judge Domitrovitch was whether the Debtors had met the applicable standard of due care for fiduciaries as required under Pennsylvania law. In his *Complaint* in this case, Plaintiff alleges that a Motion for Accounting was filed to initiate the Orphans' Court case, and that Judge Domitrovitch provided relief by way of a "surcharge," which Plaintiff describes as a penalty imposed under Pennsylvania law to compensate beneficiaries for losses caused by breach of fiduciary duty. *Complaint* ¶¶ 12-14. The case cited by Plaintiff to explain the surcharge remedy, *In re Trust of Munro*, 541 A.2d 756 (Pa. Super. Ct. 1988), provides that a surcharge is imposed:

> for failure of a trustee to exercise common prudence, skill, and caution in the performance of its fiduciary duties .... The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate.

*Id*. at 758. The Debtors characterize this determination as essentially applying a "negligence" standard. The Court sees no reason to disagree with that description.

A review of the *Opinion* further confirms this determination. Notwithstanding the comments quoted previously upon which Plaintiff relies, the state court did in fact apply a lack of due care standard in reaching its decision to surcharge the Debtors:

> By not keeping any records of the management of Mr. LaMacchia's financial affairs, and by executing checks to themselves without any notation for the purpose of the checks, the Tarbells did not exercise common prudence, skill, and caution in the performance of their fiduciary duties, and they most certainly did not exercise the care they were required to perform relative to that of an accountant and a person with several degrees. Since this Court finds the Tarbells did not exercise common prudence, skill and caution in the performance of their fiduciary duties, this Court will impose a surcharge on the Tarbells.

*Opinion* at 4 (footnote omitted). Any doubt as to the standard that was applied is removed when the "omitted footnote" is considered. In that footnote, the court speculated that the Tarbells' conduct "seems implicitly criminal" but goes on to say that the criminal nature of the acts will not be examined because "the Court is only concerned with whether the Tarbells performed their fiduciary duties to the standards imposed by law." *Id.* at n. 2.

Based on the record before it, the Court must therefore conclude that the essential issue before the Orphan's Court – and the issue on which the *Opinion* and *Order* were based – is whether the Debtors breached their duty to act with common prudence, skill, and caution in the

performance of their fiduciary duties, with Judge Domitrovitch finding that they did not.[6] As the following examination of the relevant provisions under *11 U.S.C. §523(a)* shows, that finding cannot be used as a basis to find in favor of the Plaintiff in this case via collateral estoppel.

*11 U.S.C. §523(a)(4)* is the provision on which Plaintiff places most of his reliance. It requires a finding that a debt arose from "fraud or defalcation" while acting in a fiduciary capacity[7] in order to deny discharge of the debt. Fraud is a well-known concept and obviously requires some level of willful misconduct and lack of good faith; mere negligence, even if characterized as gross negligence, is not the same thing as fraud. *In re Scheidmantel*, 868 A.2d 464, 484 (Pa. Super. Ct. 2005). A finding that the Debtors failed to meet the standard of due care required of a fiduciary under Pennsylvania law does not establish fraud.

"Defalcation" while acting in a fiduciary capacity as a distinct ground for exception from discharge under *Section 523(a)(4)* requires a bit more examination. The term is not defined in the *Bankruptcy Code*. It is defined in *Black's Law Dictionary* as: '1. Embezzlement. 2. Loosely, the failure to meet an obligation; a nonfraudulent default*." Black's Law Dictionary* 479 (9th Ed.

---

[6] It is worth pointing out that the Plaintiff, as the proponent of the argument that collateral estoppel applies in this case, bears the burden of proof as to that matter. *See Greenway Center, Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007), *Harter v. Reliance Ins. Co.*, 386 Pa. Super. 14, 24, 562 A.2d 330, 336 (1989), *Restatement, Second, Judgments §27, Comment f.* If Plaintiff believed there was something in the pleadings or elsewhere in the record of the Orphans' Court case that would help to show that allegations of fraud or something similar were actually an essential part of that case, he certainly had the opportunity to bring it before this Court in connection with the *Motion*. In the absence of any such other "evidence", when deciding the collateral estoppel issue raised by the *Motion* the Court is left solely with the *Opinion* and *Order* and reasonable inferences to be drawn therefrom

[7] It appears that the finding by the Orphans' Court, either implicitly or explicitly, that the Debtors were acting in a fiduciary capacity *vis-a-vis* their management of Plaintiff's financial affairs would be entitled to collateral estoppel effect here because it was clearly essential to the judgment there and the other requirements for collateral estoppel are met as to it. However, since the Debtors have already admitted in the present case that they were acting in a fiduciary capacity (see *Complaint* and *Answer* at ¶10) application of collateral estoppel in this regard is superfluous.

2009). Given the exceedingly broad scope of the second definition in *Black's*, it is perhaps not surprising that courts have struggled to reconcile application of the term with fundamental policies underlying the bankruptcy process.

At least three distinct standards concerning defalcation have been adopted by various courts. Some require evidence of reckless conduct by the fiduciary, some require a showing of negligent conduct, and some would find defalcation even in the case of an innocent mistake. *See, In re Parks*, 2007 WL 2033380 *14 (Bankr. D. N.J. 2007) (collecting cases). Under a negligent or innocent mistake standard, the finding by the Orphans' Court would appear to be preclusive here, while if the standard is recklessness (or more) there would be no issue preclusion for the reasons stated previously.

The Third Circuit has not spoken as to the proper standard to be applied for defalcation under *Section 523(a)(4)*. However, in *Chao v. Rizzi*, 2007 WL 2317335 (W.D.Pa. 2007), the Honorable Donetta Ambrose, at the time the Chief Judge of this District, was faced with that very issue. She noted that although it has not ruled on the defalcation question, the Third Circuit has observed that exceptions to discharge under *Section 523(a)* must be strictly construed in favor of the debtor to advance the fresh start policy of bankruptcy. Judge Ambrose went on to state that a definition of defalcation that would include negligent or innocent conduct "would do violence to both the principle of narrow construction and the 'fresh start' policy, and lead to punitive and undesirable results." *Id.* at *3. While declining to set forth the exact level of culpability that would be required, nevertheless Judge Ambrose determined that defalcation as used in *Section 523(a)(4)*

11

required something more than mere negligence or innocent mistake. She stated that "some showing of affirmative misconduct is required." *Id.*

This Court adopts the conclusion in *Chao* and rejects the view that negligence alone can support an exception to discharge under *Section 523(a)(4)* based on defalcation. It is therefore clear that the surcharge ordered in the Orphans' Court case, resting as it did on the essential issue of a negligence standard of breach of due care by a fiduciary, is not preclusive in the present case as to defalcation. It is unnecessary for the Court to go further at this time and determine the exact level of culpability that will ultimately be required for Plaintiff to prove his case.

In addition to *Section 523(a)(4)*, Plaintiff also relies upon *Sections 523(a)(2)* and *(6)* as a basis for an exception to discharge. Although Plaintiff did not brief these other sections, for the sake of completeness the Court considers them as well and concludes that neither of these alternative provisions can be established by collateral estoppel.

*Section 523(a)(2)* covers debts arising from false pretenses, false representations, or actual fraud. Just as the *Opinion* and *Order* lack preclusive effect as to fraud under *Section 523(a)(4)* for reasons stated above, they likewise fail as to *Section 523(a)(2)*.

Finally, *Section 523(a)(6)* provides that a debtor will not be discharged from any debt for "willful and malicious injury by the debtor ... to the property of another entity." "Willful" conduct is that which is voluntary, intentional or deliberate. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n. 3 (1998). Debts arising from recklessly or negligently inflicted injuries are thus not within the

scope of *Section 523(a)(6). Id.* Consequently, the collateral estoppel argument of Plaintiff also fails as to this provision.[8]

### *CONCLUSION*

For the foregoing reasons, the *Motion* will be denied and the matter will proceed toward trial.

An appropriate Order will be entered.

Dated: November 29, 2010

                                            Thomas P. Agresti, Chief Judge
                                            United States Bankruptcy Court

Case Administrator to serve:
    Joseph B. Aguglia, Jr., Esq.
    Edwin W. Smith, Esq.

---

[8] In addition to the collateral estoppel issue, the *Motion* also seeks a ruling that Plaintiff will be entitled to a recovery of attorney fees if he is successful in this case. In light of the denial of the *Motion* any question as to a right to attorney fees is premature. The Court will therefore not rule on that issue, without prejudice to Plaintiff raising it again at an appropriate time.